THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARISSA HALL,<br><br>   Plaintiff,<br><br>v.<br><br>JOYBRIDGE KIDS LLC,<br><br><br>   Defendant. | Civil Action No.: 2:25-cv-54 |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Marissa Hall and files her complaint against Defendant JoyBridge Kids LLC ("JoyBridge"), by showing this Court the following:

**INTRODUCTION**

1. Plaintiff Hall is a high-performing, hard-working employee for Defendant JoyBridge, working as both a lead behavior therapist for children and an interim manager. Hall started on October 16, 2023, and was promoted within seven months.

In October 2024, she experienced a cardiac event, passed out, and was taken to the hospital. Hall was given mild restrictions and provided them to her employer, and continued to work her normal job performing usual duties in accordance with her doctor's instructions. While on these mild restrictions, she was promoted to serve

-1-

as interim Clinic Manager—while still continuing as lead behavior therapist—on January 14, 2025. On January 20, Hall applied for the permanent manager position, and was later called the "top pick" for the job she had been performing on an interim basis.

However, on January 30, JoyBridge told her she would not be awarded the permanent manager position because of the employer's "concerns" about her ability to perform in the role due to her medical issues and/or restrictions—even though Hall was performing the very role in an interim capacity without issue. And despite rejecting Hall's application, JoyBridge asked if Hall would *continue* in an interim capacity.

On or about February 14, JoyBridge received a preservation letter from Hall's attorneys related to an impending EEOC charge of ADA discrimination. In response, JoyBridge suspended Hall on or about February 14, the suspension was supposedly with pay through February 26, but JoyBridge failed to make full payment of wages due for that period. Thereafter, JoyBridge failed to pay Hall anything and designated her as "out" on leave under the Family and Medical Leave Act ("FMLA"). This was not true. Hall had not requested continuous (or even any) FMLA leave in February or thereafter.

In addition to suspending Hall without good (or any) reason, JoyBridge demanded additional, invasive, and irrelevant medical information from Hall,

-2-

requesting information from her regarding the Clinic Manager position that she had already been denied in a transparent attempt to gather information to defeat her EEOC charge.

This action is brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the FMLA, 29 U.S.C. § 2601, *et seq.*

## THE PARTIES

2. Plaintiff Hall is a current employee of Defendant JoyBridge. She is a citizen of the State of Georgia and resides at 149 Grandview Drive, Hinesville, Georgia 31313.

3. Defendant JoyBridge is a for-profit child development company that provides therapeutic services for children with autism. The Company is headquartered in Brentwood, Tennessee.

4. Defendant JoyBridge can be served by its registered agent, Spencer Cummings, at 5203 Maryland Way, Brentwood, Tennessee 37027. JoyBridge has not registered with the Georgia Secretary of State.

5. At all relevant times, Hall was qualified and eligible for leave under the FMLA, though, again, she did not seek specific dates of FMLA leave in February or March 2025.

## JURISDICTION AND VENUE

6. The Southern District of Georgia has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331 because this case arises under the ADA and FMLA.

7. The Southern District of Georgia has personal jurisdiction over Defendant JoyBridge because JoyBridge has offices and locations in this judicial district and transacts significant business in this judicial district.

8. Venue is proper in the Southern District of Georgia under 28 U.S.C. § 1391 because Defendant JoyBridge is located in this judicial district and the events giving rise to the claims herein arose in this judicial district.

9. Hall has timely filed a charge of ADA discrimination with the Equal Employment Opportunity Commission, Charge No. 415-2025-00888, and has received a Notice of Right to Sue.

## FACTS

10. On October 16, 2023, Defendant JoyBridge hired Hall as a behavior technician.

11. Within seven months, Hall was promoted to "Lead Registered Behavior Therapist" in May 2024.

12. In October 2024, Hall experienced a cardiac event, experiencing an elevated heart rate, and passed out. She suffered from an unknown condition. Hall

sought treatment and diagnosis for this medical issue, and was instructed by her doctor to avoid "strenuous" activities.

13. Hall job duties did not involve "strenuous" duties as an essential job function, and instead involved working one on one with children in a therapeutic setting. As a non-essential function, it was a rare occurrence that she would have to pursue a wandering/eloping autistic child whom she was working with therapeutically who would wander off. Such a pursuit may or may not be "strenuous," and moreover the specific children with a known history of this wandering behavior were well known and could be specifically accounted for.

14. Hall informed Defendant JoyBridge of her doctor's instructions on November 13, 2024, and asked that she not be assigned to work with any of the specific children with a known history of wandering. This was a simple and easy accommodation, and otherwise, she continued to perform her normal job duties.

15. On January 14, 2025, Hall was asked to take on additional responsibilities as interim Clinic Manager. She agreed and began assuming these duties immediately. The position of interim Clinic Manager and permanent Clinic Manager involved the exact same duties, and allowed for even easier accommodation than her prior position, since only a small percentage of her time (about one hour a day) as interim Clinic Manager involved treating children therapeutically.

16. The job duties of interim Clinic Manager and permanent Clinic Manager did not involve strenuous activities. Ms. Hall performed these duties beginning January 16 without any material modification of the job duties.

17. On January 20, 2025, Hall formally applied for the permanent Clinic Manager position, after previously expressing interest in the permanent role. Later, during her interview for the open position, Hall was called the "top pick" for the job.

18. But on January 30, 2025, Hall told she would not be promoted into the position because Defendant JoyBridge erroneously believed, without further discussion or interactive process, that Hall could not perform all of the essential functions of the job description. Hall pleaded with her employer to reconsider this decision, but JoyBridge refused because it erroneously regarded her as disabled.

19. On January 31, 2025, Hall wrote to Defendant JoyBridge HR, complaining of discrimination from clinic director Lindsey Merritt.

20. In response, Defendant JoyBridge HR called Hall's complaint of discrimination a "big miscommunication/misunderstanding." HR never met with Hall and discussed her complaint.

21. Later, Defendant JoyBridge's selection for the permanent Clinic Manager position did not accept, so JoyBridge reinterviewed other candidates multiple times. Hall was never offered a reinterview.

22. Defendant JoyBridge's ultimate selection is less qualified than Hall: lacking any experience with Applied Behavior Analysis therapy or Registered Behavior Technician therapy and any Registered Behavior Technician credential—all of which Hall has.

23. Hall could perform all the essential functions of the permanent Clinic Manager position with or without accommodation.

24. Hall was in fact performing all the essential functions of the permanent Clinic Manager position as the interim Clinic Manager.

25. On February 4, 2025, Hall requested *intermittent* FMLA leave for doctor's appointments. Hall's request for *intermittent* FMLA leave was granted. This request was to allow Hall to take days off as needed for occasional and intermittent doctors' appointments. However, Hall did not request to use any of the intermittent FMLA leave in February or March 2025.

26. On February 11, 2025, Hall's attorneys sent Defendant JoyBridge a preservation letter through regarding evidence pertaining to her ADA claims.

27. In response, on February 14, Defendant JoyBridge demanded that she provide an extensive and invasive amount of new medical information. Hall had previously given copious medical information to JoyBridge—sufficient to grant her intermittent FMLA leave request and earlier accommodation request—prior to

February 14. Hall had not made any new accommodation requests and had already been denied the permanent Clinic Manager position.

28. Defendant JoyBridge's new requests were not job related or consistent with business necessity. JoyBridge's new requests for medical information were solely related to JoyBridge's effort to support its own litigation defense to Hall's EEOC charge.

29. Defendant JoyBridge also *indefinitely* suspended Hall on February 14, and without pay beginning on February 27. JoyBridge did this in person, stating that it was "granting" Hall leave, and by email, stating that it is "granting a Temporary Paid Leave of Absence until February 26, 2025" which will "transition to an Unpaid Leave of Absence" unless Hall complied with JoyBridge's demands for the additional extensive and invasive medical information.

30. Thereafter, Defendant JoyBridge took the false position that Hall's leave was "FMLA" leave. This was false since no such leave had been requested.

## COUNT ONE: ADA DISCRIMINATION

31. Hall incorporates herein by reference the allegations set forth in the preceding paragraphs of her complaint as if fully set forth herein.

32. At all times relevant herein, Defendant JoyBridge regarded Hall as disabled. 29 C.F.R. 1630.2(g).

33. Defendant JoyBridge's perception was false and lacking in any justification. Hall was at all relevant times qualified for her roles as Lead Registered Behavior Therapist and interim Clinic Manager and able to perform all of the essential functions of these positions with or without a reasonable accommodation.

34. Hall was at all times qualified for the permanent Clinic Manager position and able to perform all of the essential functions of this position with or without a reasonable accommodation.

35. Defendant JoyBridge violated the ADA by refusing to promote Hall from *interim* manager to *permanent* manager because JoyBridge regarded Hall as disabled.

36. Defendant JoyBridge acted with malice and/or reckless indifference to Hall's federally protected rights when it rejected Hall's application to be permanent manager because it regarded Hall as disabled.

37. As a direct result of Defendant JoyBridge's refusal to consider Hall as an applicant because of her perceived disability, Hall has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

38. Hall is entitled to recover compensatory and punitive damages from Defendant JoyBridge as a result of JoyBridge's ADA violations.

## COUNT TWO: ADA INTERFERENCE

39. Hall incorporates herein by reference the allegations set forth in the preceding paragraphs of her complaint as if fully set forth herein.

40. Defendant JoyBridge interfered with Hall's ADA rights by refusing to engage in any kind of meaningful interactive process and otherwise acting in ways that discouraged her from seeking accommodation or enforcing her ADA rights.

41. The ADA prohibits an employer from "coerc[ing], intimidat[ing], threaten[ing], or interfer[ing] with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, . . . any right granted or protected" by the ADA. 42 U.S.C. § 12203(b).

42. Defendant JoyBridge acted with malice and/or reckless indifference to Hall's federally protected rights when, in response to Hall's exercise of her ADA rights, JoyBridge rejected Hall's application outright rather than consider her requests for accommodation or engage in the interactive process.

43. As a direct result of Defendant JoyBridge's adverse employment action, Hall has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

44. Hall is entitled to recover compensatory and punitive damages from Defendant JoyBridge as a result of JoyBridge's ADA violations.

## COUNT THREE: ADA RETALIATION

45. Hall incorporates herein by reference the allegations set forth in the preceding paragraphs of her complaint as if fully set forth herein.

46. Defendant JoyBridge violated the ADA by suspending Hall because Hall asserted her rights under the ADA.

47. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a).

48. Hall engaged in protected activity when she requested accommodations, complained of discrimination to HR, sent Defendant JoyBridge a preservation letter from counsel asserting a legal claim, and filed an ADA discrimination charge with the EEOC.

49. Defendant JoyBridge then took an adverse employment action against Hall by suspending her indefinitely because of one or more of the protected activities.

50. Defendant JoyBridge acted with malice and/or reckless indifference to Hall's federally protected rights when it suspended Hall because of the protected activity—Hall's requests for accommodations, complaints of discrimination to HR, preservation letter, and EEOC charge alleging ADA discrimination.

51. As a direct result of Defendant JoyBridge's adverse employment action, Hall has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

52. Hall is entitled to recover compensatory and punitive damages from Defendant JoyBridge as a result of JoyBridge's ADA violations.

## COUNT FOUR: ADA IMPROPER MEDICAL INQUIRY

53. Hall incorporates herein by reference the allegations set forth in the preceding paragraphs of her complaint as if fully set forth herein.

54. The ADA allows employers to require examinations only if (A) the examination is job-related and (B) consistent with business necessity. 42 U.S.C. § 12112(d)(4).

55. Despite Hall and her doctor providing copious medical information to Defendant JoyBridge, sufficient for it to grant her request for intermittent FMLA leave request and prior requests for accommodations, JoyBridge demanded that Hall undergo additional medical examination(s). This demand and JoyBridge's conditioning her continued employment on said exam(s) constitute violations of the ADA.

56. Hall was treated differently than other employees with respect to medical evaluations because other employees were *not* subjected to a series or

continued examination requests, and Defendant JoyBridge therefore violated 42 U.S.C. § 12112(d)(3)(A).

57. Defendant JoyBridge's request(s) for medical examination(s) were not job-related and not consistent with business necessity, but rather a thinly veiled attempt to support JoyBridge's own litigation defense to Hall's EEOC charge.

58. As a direct and proximate result of Defendant JoyBridge's violations of the ADA, Hall has suffered damages as set forth in the prayer of relief below, for which JoyBridge is liable.

## COUNT FIVE: FMLA INTERFERENCE

59. Hall incorporates herein by reference the allegations set forth in the preceding paragraphs of her complaint as if fully set forth herein.

60. At all relevant times, Defendant JoyBridge has been an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4).

61. At all relevant times, Hall was an "eligible employee" of Defendant JoyBridge within the meaning of the FMLA, 29 U.S.C. § 2611(2).

62. Hall was entitled to FMLA leave "[b]ecause of a serious health condition." 29 U.S.C. § 2612(a)(1)(D).

63. Hall's serious health condition met the criteria of 29 C.F.R. § 825.115.

64. Defendant JoyBridge interfered with Hall's FMLA rights by unilaterally designating Hall's forced suspension as voluntary FMLA leave.

65. Hall has been prejudiced by the FMLA violation and has suffered a harm remediable by either damages or equitable relief. Specifically, Hall was damaged through loss of wages, salary, employment benefits, and loss of FMLA days denied to her by reason of the violation.

66. Hall has suffered and continues to suffer damages as a direct and proximate result of Defendant JoyBridge's interference with her exercise of rights under the FMLA.

67. Hall is entitled to recover from Defendant JoyBridge for at least the wages and employment benefits she has lost as a result of JoyBridge's unlawful conduct in violation of the FMLA, and interest thereon, calculated at the prevailing rate.

68. Hall is entitled to recover liquidated damages from Defendant JoyBridge in addition to the compensation alleged above in accordance with 29 U.S.C. § 2617(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hall respectfully prays this Court to grant the following relief:

    a.    That Hall has and recovers from Defendant JoyBridge lost back pay, front pay, and benefits, with prejudgment interest thereon;

b. That Hall has and recovers liquidated damages in an amount to be determined by the Finder of Fact;

c. That Hall has and recovers compensatory and punitive damages in an amount to be determined by the Finder of Fact;

d. That Hall has and recovers her attorneys' fees and costs of litigation pursuant to all applicable federal laws; and

e. Any and other such further relief this Court of the Finder of Fact deems equitable and just.

**Plaintiff Hall demands a trial by jury.**

This 3rd day of April, 2025.

                                                Respectfully submitted,

                                                HILL, KERTSCHER & WHARTON, LLP

                                                By: /s/ Ian Kecskes
                                                Ian L. P. Kecskes
                                                Georgia State Bar No. 490162
                                                *Attorney for Plaintiff*

3625 Cumberland Blvd.
Suite 1050
Atlanta, Georgia 30339
Telephone:  770-953-0995
Facsimile:   770-953-1358
E-mail:      ikecskes@hkw-law.com